THE KRAMERTOWN COMPANY, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kramertown Co. v. Commissioner
Docket No. 6119-70.
United States Tax Court
T.C. Memo 1972-239; 1972 Tax Ct. Memo LEXIS 18; 31 T.C.M. (CCH) 1177; T.C.M. (RIA) 72239; November 30, 1972, Filed Norman B. Gillis, Jr. (an officer), for the petitioner. Robert D. Hoffman, for the respondent. FORRESTER
MEMORANDUM OPINION FORRESTER, Judge: Respondent determined deficiencies in petitioner's Federal income tax for the fiscal years ended July 31, 1966 and 1967, in the amounts of $7,833.05 and $4,135.91, respectively. Many issues have been settled between the parties and the only one now remaining for our consideration is whether petitioner's eleven individual rooftop heating and air conditioning units located on the roof of its shopping center in McComb, Mississippi, qualify as "section 38 property" for purposes of the investment tax credit *19 for the year ending July 31, 1966. All of the facts have been stipulated and are so found. Petitioner is a Mississippi corporation with its principal place of business in McComb. For the years in issue it filed its income tax returns with the Director, Internal Revenue Service Center, Chamblee, Georgia. Petitioner's principal source of revenue is from rents, generated largely from its shopping center known as pike Center Mart in McComb. Construction of this center was completed in 1965 on petitioner's land and during the years in issue petitioner had seven tenants whose premises or stores were heated and air conditioned by rooftop units as follows: TG&Y
2 units
Sears Roebuck & Company
3 units
Shainberg
3 units
Great A&P Food Stores, Inc.
furnished itsown units
Barber Shop
1 unit
Beauty Shop
1 unit
Drug Store
1 unit
The eleven units owned and furnished by petitioner had a cost basis to it of $69,021.71. They are located on the roof of the building. Each is a combination gas-electric air conditioner, and is a complete and packaged year-around unit, approved only for outdoor installation. Each unit includes a factory assembled refrigeration system *20 (compressor, condenser and evaporator), blower, condenser fan, heat exchanger, and gas control, and all internal electrical wiring. The units rest on treated 4" X 4" wood runners or steel beams on the finished roof of the building. A gas line measuring 1/2-inch in diameter runs from the interior of the building to the roof, at which point there is an exterior cut-off valve. The gas supply line is attached to the unit by means of a conventional pipe coupling. The coupling may be removed with a plumber's wrench, operated by hand. Each supply line is equipped with a shut-off valve. If occasion arises to disconnect the gas supply line from the unit, the shut-off valve, activated by hand pressure, is utilized to prevent the gas from escaping through the open union. Electricity is supplied to each unit by means of electric wires running from inside the building to a fused, weather-proof, disconnect switch box located on the roof adjacent to each unit. The unit is then connected by wires to the weatherproof disconnect switch box. These switch boxes are mounted independently of the units. All outside casing panels of the unit must remain free for removal during servicing. The parties *21 have agreed that for purposes of depreciation the Pike Center Mart buildings have a useful life of 33-1/3 years and the heating and air conditioning system has a useful life of 12 years. The words of the stipulation are not entirely definitive but it is clear (both from photographs of some of the units in place on the roof of the building, and also from petitioner's argument that it claims no investment credit for any item of wiring, piping or duct work located inside of or permanently attached to the building) that the units in issue were connected by ducts and pipes to the areas to be served. Section 38 of the Code [1] provides for a credit with regard to certain depreciable property. Section 48 of the Code provides in pertinent part: (a) Section 38 Property.-- (1) In general.--Except as provided in this subsection, the term "section 38 property" means-- (A) tangible personal property, or (B) other tangible property (not including a building and its structural components) * * * Petitioner argues for the credit for the year ended July 31, 1966, on the basis that the eleven units in question were tangible personal property and respondent answers by citing regulations section *22 1.48-1(e)(2) which reads in pertinent part: The term "structural components" includes such parts of a building as * * *; all components (whether in, on, or adjacent to the building) of a central air conditioning or heating system, including motors, compressors, pipes and ducts; * * * Petitioner argues further that the eleven units were tangible personal property because they were so classified and assessed for state, city and county ad valorem tax purposes. Respondent answers that this is irrelevant, citing regulations section 1.48-1(c): Definition of tangible personal property. * * * Local law shall not be controlling for purposes of determining whether property is or is not "tangible" or "personal". Thus, the fact that under local law property is held to be personal property or tangible property shall not be controlling. Conversely, property may be personal property for purposes of the investment credit even though under local law the property is considered to be a fixture and therefore real property. * * * We must agree with respondent, for even without this regulation *23 we would not be bound by state law. The Supreme Court has held that "if it is found in a given case that an interest or right created by local law was the object intended to be taxed, the federal law must prevail no matter what name is given to the interest or right by state law." . The Supreme Court has also held that whether immature oranges were real property when the orange grove was sold was a question controlled by Federal law. , rehearing denied . In the instant case we are dealing with a statute specifically granting a tax credit for the investment in certain depreciable property. Property not intended by Congress to receive such credit is not brought within the statute solely because under state law it is labeled personal, rather than real property. The facts of this case are so closely identical to those which we considered in the third issue of , that there is no ground for any meaningful distinction. We reiterate our reasoning expressed in that case and consequently *24 hold for respondent on this sole remaining issue. Because of the concessions previously noted, Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise specified.↩